### WEISE v. ANDERSON.

1. MORTGAGES—DEED AS SECURITY—RENTS AND PROFITS—SALE OF STOCK.

A person who has received a warranty deed as security for the purchase price of certain corporate stock, and has controlled the land for nearly six years, must account for the rents and profits, and place the grantor *in statu quo*, in order to recover the purchase price of the stock.

2. SAME—REMEDY OF GRANTEE.

One who has received a warranty deed as security for the purchase price of corporate stock, and has been in possession, receiving the rents and profits, in order to recover the purchase price of the stock, should proceed in equity to have the deed declared a mortgage.

Error to Wayne; Hosmer, J. Submitted June 10, 1903. (Docket No. 56.) Decided September 30, 1903.

*Assumpsit* by Carl Weise against Andrew Anderson to recover the purchase price of certain corporate stock. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

In the summer of 1895, plaintiff, defendant, and two others agreed to organize a corporation to manufacture matches in the city of Detroit. The agreement rested in parol. One was to receive $5,000 of the stock for his practical knowledge as a matchmaker, and the others were to put in money. When the company was actually organized, plaintiff, according to his own statement, had advanced $6,143.90, defendant had advanced $15,-800, and the other corporator $16,500. The capital stock was $60,000. Defendant subscribed for $20,000, one Reese $25,000, the plaintiff $10,000, and the other stockholder received stock to the amount of $5,000. Each of the three gave his note to the corporation for the

difference between the amount actually paid in by him and the par value of his stock. Defendant claims that plaintiff put in only $5,640. The difference, however, is immaterial.

Operations were commenced in October. About three weeks afterwards, the building was burned. Some of the stock, and a large portion of the machinery and other materials, were saved. The value of the property saved is in dispute. The highest estimate of the value of the entire property after the fire was about $14,000. A meeting of the stockholders was held immediately after the fire to consider the situation. Defendant wanted to rebuild, and go on with the business. Plaintiff declined, saying he had no more money to invest. Negotiations were then entered into between plaintiff and defendant for the purchase of plaintiff's stock. Defendant offered plaintiff his promissory notes for the amount he (plaintiff) had actually invested in payment of his stock. Plaintiff refused the offer, unless the notes were indorsed. Afterwards they completed some arrangement for the sale and purchase of the stock. Pursuant to the agreement, defendant conveyed by warranty deeds to plaintiff a house and lot and three vacant lots in the city of Detroit. The consideration expressed in the deed conveying the house and lot was $7,500, and in that conveying the vacant lots, $1,500. The deeds were executed December 11, 1895, were duly recorded, and the stock transferred by plaintiff to the defendant. The deed of the house and lot was subject to a mortgage of $2,000. There was also another mortgage of $1,000 upon it at the time, but that was subsequently paid by the defendant, discharged, and does not now affect the rights of the parties.

Plaintiff immediately took possession of the land conveyed by defendant to him, has rented it, received the rents, and paid the taxes. On May 28, 1897, plaintiff conveyed the land to his brother, Paul Weise, for a recited consideration of $6,000. Plaintiff testified that he actually received this amount from his brother. On the same day

his brother gave to him a land contract, agreeing to sell to him the house and lot for $2,500.   On the same day his brother also conveyed the other lots to plaintiff and his wife by quitclaim deed as joint tenants, with right of survivorship.   With some of the money received from his brother, plaintiff paid the $2,000 mortgage upon the house and lot, and procured its discharge.

With the title to the land in this condition, plaintiff, in 1901, nearly six years after the transaction, brought this suit at law to recover the purchase price of the stock sold by him to the defendant. His claim is that he sold the stock to defendant for the amount he had put in, and that he took the deeds simply as security.   The claim of the defendant is that he conveyed the lands in full payment for the stock.   The case was tried twice, without any change in the condition of the title to the land.   After the testimony had been closed on the second trial, the court opened the case, and permitted the plaintiff to tender in court a quitclaim deed from plaintiff and his wife to defendant of the house and lots, and an assignment by plaintiff and his wife to the defendant of all rights and interests under the land contract, and also a deed from his brother, Paul, and his wife to the defendant, conveying the same property, accompanied by the statement that the deeds "may be accepted on the payment of the $2,000 incumbrance on the property."   The court directed a verdict for the defendant, for the reason that, when this action was commenced, plaintiff had no cause of action enforceable at law.

*Corliss, Andrus, Leete & Joslyn,* for appellant

*Edwin Henderson (Allan H. Frazer,* of counsel), for appellee.

GRANT, J. (*after stating the facts*).   Aside from the deeds executed by the defendant to the plaintiff, and by the plaintiff to his brother, and the land contract, the transactions between all the parties rest entirely in parol.

The instruments themselves are consistent only with an absolute sale. The value of plaintiff's interest as a stockholder in the tangible assets of the corporation at the time he transferred his stock was about $2,000. Plaintiff and defendant were both business men, and understood the nature and effect of the deeds which were given and received. For nearly six years plaintiff was in possession of the property, dealing with it as his own, and finally conveying the title thereto by warranty deed. The deed of the lots by plaintiff to his brother, and on the same day a reconveyance of these same lots to plaintiff and his wife, as tenants by the entirety, is very nearly conclusive that the deeds from defendant to plaintiff and from plaintiff to his brother were not intended as mortgages. If, however, it be conceded that the testimony in his behalf was sufficient to raise a doubt as to whether the deeds were in fact mortgages, still it must be held that plaintiff is not entitled to a reversal of the judgment. Under his own theory, he was a mortgagee in possession, under a conveyance upon its face a warranty deed. For nearly six years he controlled the land, leased it, conveyed it, and received the rents and profits. Even if he could maintain a suit at law, it was his legal duty to account for the rents and profits he had received from the use of the property, and to place the defendant *in statu quo.* There is no testimony to show how much he received, or how much he expended.

A deed conveys the legal title to the grantee. When either party claims that it was, in effect, a mortgage, the usual remedy is by bill in equity to have it so declared. This is the proper remedy, especially in a case where there must be an accounting for rents and profits. It is true that the question may sometimes arise in a suit at law, as where the grantor sues the grantee for the purchase price. *Kellogg* v. *Northrup,* 115 Mich. 327 (73 N. W. 230). No such case is presented by this record.

The direction of the circuit judge was correct.

Judgment affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred with GRANT, J. CARPENTER, J., concurred in the result.